DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**V.C.B. and E.G.B.,**
Appellants,

v.

**SULTAN SHAKIR,**
Appellee.

No. 4D14-1292

[August 27, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy L. Bailey, Judge; L.T. Case No. FMCE 10-011456-41-97.

Nancy L. Hoffman of Nancy L. Hoffman, P.A., Fort Lauderdale, for appellant.

No brief filed for appellee.

CONNER, J.

The maternal grandparents appeal the trial court's order denying their petition to terminate the father's parental rights and to adopt their grandchild. They argue that the trial court erred in interpreting section 63.089, Florida Statutes (2014) and Florida case law to require a finding that the father exhibited a willful disregard for the child's safety prior to terminating the father's parental rights. We agree and reverse because the trial court misinterpreted the statutory grounds for termination of parental rights due to abandonment under Chapter 63, Florida Statutes. On remand, we direct the trial court to enter an order granting termination of parental rights because the trial court made sufficient findings to support termination and to consider further proceedings to allow adoption of the child by the grandparents.

The child was born in August 2002. In March 2010, the mother died leaving behind the child she conceived with the father. In August 2010, the grandparents filed their petition in court seeking to terminate the father's parental rights and to adopt the child pursuant to Chapter 63,

Florida Statutes. The petition sought termination of parental rights on the basis that the father abandoned the child.

In its order denying the grandparent's petition, the trial court found by clear and convincing evidence that the father had abandoned the child, both "financially and emotionally," based on the definition of "abandoned" contained within section 63.032, Florida Statutes (2014).[1] The trial court further stated, however:

> W. That the Court has considered the holding In *Beagle v. Beagle*, 678 So. 2d 1271 (Fla. 1996) and Florida Statute Section 63.089(4)(a). *The Court interprets both authorities to require a finding that the Respondent/Father willfully disregarded the minor child's safety prior to terminating the Respondent's parental rights.*
>
> X. The Court finds that while the Respondent/Father abandoned the minor child, the Respondent/Father did not exhibit a willful disregard of the minor child's safety which this Court finds to be a requirement prior to terminate [sic] parental rights.

(emphasis added). The grandparents appeal this order.

*Legal Analysis*

"[W]here the question involves interpretation of a statute, it is subject to *de novo* review." *Brown v. City of Vero Beach*, 64 So. 3d 172, 174 (Fla. 4th DCA 2011) (citing *Tasker v. State*, 48 So. 3d 798, 804 (Fla. 2010)).

Chapter 63, known as the "Florida Adoption Act," allows a petitioner who is a relative of the child to seek termination of parental rights and

[1] The trial court made extensive findings of fact in its written order to support the conclusion that the father abandoned the child by failing to provide emotional and financial support for the child and by failing to maintain any meaningful contact with the child. The trial court found the father's conduct was willful and "was not caused by anything other than [the father's] inaction." The father had no contact with the child for four years prior to the final hearing and had not provided any financial support for five years prior to the final hearing, despite having a substantial annual income. The trial court specifically found that "based upon the clear and convincing evidence presented to the Court, [the father] is unfit to provide for the care and control of the child." Although not explicitly stated, we are satisfied the trial court was inclined to grant the petition, but concluded the law would not support termination.

2

adopt a child in the same petition. § 63.087(3), Fla. Stat. (2014). If a duly executed consent by a parent is not filed with the court, notice of the proceedings must be given to the parent. § 63.089(2)(a)3., Fla. Stat. A court may enter a judgment terminating parental rights if the court determines by clear and convincing evidence, supported by written findings of fact, that the parent has been properly served with notice of the proceedings, "and has been determined under subsection (4) to have abandoned the child." § 63.089(3)(e), Fla. Stat.

Subsection (4) of Section 63.089 provides:

> (4) Finding of abandonment.--A finding of abandonment resulting in a termination of parental rights must be based upon clear and convincing evidence that a parent or person having legal custody has abandoned the child in accordance with the definition contained in s. 63.032.

§ 63.089(4), Fla. Stat. (2014).

Section 63.032(1) defines "abandoned" as:

> "Abandoned" means a situation in which *the parent* or person having legal custody of a child, *while being able, makes little or no provision for the child's support or makes little or no effort to communicate with the child, which situation is sufficient to evince an intent to reject parental responsibilities*. If, in the opinion of the court, the efforts of such parent or person having legal custody of the child to support and communicate with the child are only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.

§ 63.032(1), Fla. Stat. (2014) (emphasis added).

Section 63.089(4) further states:

> (a) In making a determination of abandonment at a hearing for termination of parental rights under this chapter, *the court shall consider*, among other relevant factors not inconsistent with this section:
>
> *1. Whether the actions alleged to constitute abandonment demonstrate a willful disregard for the safety or welfare of the child or the unborn child;*

3

2. Whether the person alleged to have abandoned the child, while being able, failed to provide financial support;

3. Whether the person alleged to have abandoned the child, while being able, failed to pay for medical treatment; and

4. Whether the amount of support provided or medical expenses paid was appropriate, taking into consideration the needs of the child and relative means and resources available to the person alleged to have abandoned the child.

§ 63.089(4), Fla. Stat. (emphasis added).

In denying the petition, the trial court not only focused on the language of subsection (4)(a)(1) emphasized above, but also our supreme court's decision in *Beagle v. Beagle*, 678 So. 2d 1271, 1276 (Fla. 4th DCA 1996).

At issue in *Beagle* was the 1993 amendment to section 752.01, Florida Statutes, which allowed grandparents to petition for visitation rights. The court narrowly focused its attention on the portion of the statute that allowed grandparental visitation in situations in which a child is living with both natural parents and at least one parent objects to the visitation. The court discussed the liberty interest a parent has "in determining the care and upbringing of their children free from the heavy hand of government paternalism." (citing *Padgett v. Dep't. of Health and Rehabilitative Servcs.*, 577 So. 2d 565, 570 (Fla. 1991)) (internal quotation marks omitted).

The court noted that the fundamental liberty interest in parenting is specifically protected in the privacy provision of Article I, section 23 of the Florida Constitution. *Beagle*, 678 So. 2d at 1275. The court declared the portion of the statute unconstitutional because it did not require a showing of harm to the child. Without harm to the child, the court concluded there was no compelling state interest to justify interference with a parent's liberty interest and privacy rights to raise the child by allowing grandparents to have visitation over a parent's objection. The court stated:

With this foundation, we address a very narrow question. Does the State have a compelling state interest in imposing grandparental visitation rights, in an intact family, over the objection of at least one parent? We find that the challenged paragraph, as currently written, does not demonstrate such a compelling state interest. Our standard is stringent. We have

previously held that the statute requiring parental consent prior to an abortion did not satisfy the compelling state interest standard. *In re T.W.,* 551 So.2d 1186 (Fla.1989). On the other hand, *we have approved State interference with the fundamental right of parents to raise their children where the State is acting to protect the children from harm. For example, we have allowed the State to terminate parental rights where a substantial risk of significant harm to a child exists. Padgett,* 577 So.2d at 571. We have also recognized that the State has a compelling interest in preventing the sexual exploitation of children within the home. *Schmitt v. State,* 590 So.2d 404 (Fla.1991), *cert. denied,* 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992). *Our cases have made it abundantly clear that the State can satisfy the compelling state interest standard when it acts to prevent demonstrable harm to a child.*

The challenged paragraph does not require the State to demonstrate a harm to the child prior to the award of grandparental visitation rights. *Based upon the privacy provision in the Florida Constitution, we hold that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm.*

*Id.* at 1276 (emphasis added).

Although, the trial court was correct in determining that it was required to find harm to the child prior to infringing upon the father's fundamental right to parent, the trial court erred in determining the harm had to be in the nature of *a willful disregard for the safety or welfare of the child.*[2] The

---

[2] We note that in the context of termination of parental rights under Chapter 39, Florida Statutes,

'Harm' to a child's health or welfare can occur when any person:

. . .

(e) Abandons the child. Within the context of the definition of "harm," the term "abandoned the child" or "abandonment of the child" means a situation in which the parent . . . while being able, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both.

definition of "abandoned" in Chapter 63 does not *require* such a finding. Section 63.089(4)(a) simply states the court shall consider, *among other relevant factors*, whether actions alleged to constitute abandonment demonstrate a willful disregard for the safety or welfare of the child. In essence, the trial court construed "abandoned" more narrowly than the statute requires.

We reach that conclusion because section 63.089(4) states the sole ground for termination of parental rights, absent consent, and requires a finding by clear and convincing evidence that the parent has "abandoned" the child as defined in section 63.032(1). We construe the provisions of section 63.089(4)(a) to simply list factors the trial court should consider which the legislature deemed to be particularly pertinent. We do not construe the provisions of section 63.089(4)(a) to *limit* the definition of "abandoned" under section 63.032(1) to only those situations.

As we observed in *J.S. v. S.A.*, 912 So. 2d 650, 662 (Fla. 4th DCA 2005), "[c]ourts agree that the passage of time can be harmful to the well-being of a child and that a stable home environment for the child deserves consideration along with the interest of biological parents." In this case, the trial court made ample findings that the child has been abandoned by the father and harmed to the point that his liberty interest and privacy right to raise his child have been forfeited. The child's right to a stable home environment provided by the grandparents must prevail.

We therefore reverse the trial court's order denying termination of the father's parental rights and remand the case with instructions that the trial court enter an order terminating the father's parental rights and entertain the necessary proceeding to grant the adoption.

*Reversed and remanded.*

WARNER and GROSS, JJ., concur.

*   *   *

**Not final until disposition of timely filed motion for rehearing.**

---

§ 39.01(30)(e), Fla. Stat. As can be seen, the definition of "abandon" in Chapter 39 is very similar to the definition in Chapter 63.